**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMARINA JOHNSON,

     Plaintiff,

                                   Case No:

v.

                                   Hon.

BRIDGEWATER INTERIORS, L.L.C.,

     Defendant.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI  48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, Jamarina Johnson (hereinafter "Johnson"), by and through her attorney's Scott P. Batey and the Batey Law Firm, PLLC, and for her Complaint against Defendant, Bridgewater Interiors, L.L.C. (hereinafter "Bridgewater") states as follows:

1. Plaintiff, Jamarina Johnson, is a resident of the City of Detroit, County of Wayne and State of Michigan.

2. Defendant, Bridgewater Interiors, L.L.C. is a Michigan limited liability company whose resident agent is Ronald E. Hall, Jr. and whose principal place of business is located at 4617 West Fort Street, Detroit, MI 48209.

3. Jurisdiction and venue are proper in the District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

4. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and jurisdiction and venue is otherwise proper in this Court.

5.      Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful discrimination/harassment consisting of sexual harassment and retaliation in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA, §37.2101, *et seq*. which resulted in emotional and economic damages to Plaintiff.

**GENERAL ALLEGATIONS**

6.      Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7.      Plaintiff, Jamarina Johnson began her employment with Defendant, Bridgewater on or about September 26, 2018 and was most recently employed as a line worker.

8.      Throughout Plaintiff's employment with Defendant she was an exemplar employee.

9.      Despite being an exemplar employee, throughout Plaintiff's employment with Defendant her immediate supervisor's boss, Superintendent, Mike Evans sexually harassed Plaintiff by trying to flirt with her, trying to get her to go out with him, commenting about her breasts and making strong references to the fact he wanted to have sex with her.

10.     Plaintiff had no interest in Mr. Evans, but rather than filing a complaint for sexual harassment elected to ignore his advances in hopes he was stop so she could continue to work at the job she loved.

11.     On January 23, 2019 Plaintiff arrived at work at 4:30 p.m. and over the next seven hours was bombarded with extreme sexual harassment and aggression ultimately costing her, her job.

12.     As a lineworker, Plaintiff worked at a station with a partner as part of a two-person team.

13.     After Plaintiff returned from lunch break she was surprised that her partner had been removed from her station.

14.     She then observed Mr. Evans continuing to come by her station, leaving her the

impression he had moved her partner so he could speak with her in private.

15.     After two or three trips by Plaintiff's station, Mr. Evans stopped and asked Plaintiff "your hair looks nice and I was wondering if the hair between your legs looked as good."

16.     Mr. Evans' comment was so vulgar it shook Ms. Johnson to the core and substantially interfered with her ability to concentrate and do her job.

17.     After she regained her composure, Plaintiff asked her immediate supervisor, James Terry if she could go to Human Resources ("HR") to file a complaint.

18.     Mr. Terry denied her request and began pressuring her to work faster.

19.     Plaintiff was still visibly shaken over Evans' comment and Terry's refusal to let her go to HR, she was unable to keep up with her work and could feel herself falling behind.

20.     Before Plaintiff could recover, Evans came up to her station and began yelling at her that she "can't move fast enough" and to "get off my line-go to the lunch room."

21.     Plaintiff left her station and on the way to the lunch room stopped at HR to file a complaint for sexual harassment.

22.     When Plaintiff arrived at HR, the person with HR, Anthony Johnson, was busy on another matter and asked Plaintiff to wait.

23.     While Plaintiff was waiting in HR to file a complaint of sexual harassment against Mr. Evans, he, Mr. Terry and a Union Steward barged into HR and began yelling at Plaintiff.

24.     Evans told her "didn't I tell you to stay in the lunch room, go back to the lunch room—in fact, just leave the premises."

25.     Evans physically intimidated Plaintiff and prevented her from filing a complaint with HR.

26.     Plaintiff left the premises and went to the Warren Police Department where she filed a Police Report.

27.     Upon information and belief, in the early morning of January 24, 2019 officers from  the Warren Police Department arrived at Defendant, Bridgewater to investigate Plaintiff's

complaint and interviewed everyone involved on the part of Defendant, including Mr. Evans and members of HR.

28.     The next morning, on January 24, 2019 Plaintiff returned to work to file the report she had wanted to file the night before.

29.     When Plaintiff attempted to use her key badge, she found her badge would not work and she had to be escorted onto the premises.

30.     She went to HR and spoke with Diane Moore whom she understood to be the Manager of Human Resources.

31.     Plaintiff explained to Ms. Moore what happened the evening before and Ms. Moore appeared to be sympathetic and apologized to Plaintiff for having to experience the ordeal.

32.     Ms. Moore then suggested Plaintiff to "go home and get some rest" and asked her about her interest in working on a different shift.

33.     Plaintiff said that was fine as long as she did not have to see Mr. Evans.

34.     Ms. Moore told her she would get back to her.

35.     On January 25, 2019 Plaintiff texted Ms. Moore inquiring as to the status of her beginning a new shift and Ms. Moore called her back telling Plaintiff she had not forgotten about her and she would get back to her.

36.     On January 28, 2019 Ms. Moore contacted Plaintiff and asked for a statement from her describing what had happened the evening of January 23, 2019.

37.     On January 29, 2019 Plaintiff went to Bridgewater to give Ms. Moore her statement, but Ms. Moore was not available and the receptionist would not take it.

38.     Between January 29th and February 4th Plaintiff attempted to call and text Ms. Moore no less than five (5) times to find out how Ms. Moore wanted Plaintiff to send the statement, but Ms. Moore stopped taking Plaintiff's phone calls and did not return any of the texts.

39.     On February 4, 2019 Plaintiff faxed the statement to Ms. Moore, but has not heard from her since then and Plaintiff has presumably been terminated or suspended without pay.

40.     The harassment and discrimination caused a physically dangerous and a hostile and offensive work environment due to sex and Plaintiff's sex.

41.     During the time period in question, Defendant was Plaintiff's employer and Plaintiff was its employee within the meaning of Title VII of Civil Rights Act of 1964, and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*.   Moreover, Defendant, Bridgewater is responsible for all acts committed by its agents, representatives and employees within the scope of their employment.

42.     At all times relevant, Plaintiff was acting as an employee.

43.     Defendant, through their agents, representatives and employees, were predisposed to sexually harass and discriminate against Plaintiff on the basis of her gender and acted in accordance with that predisposition.

44.     Defendants' actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

45.     On February 26, 2019 the United States Department of Justice in coordination with the EEOC issued a Right to Sue letter against Bridgewater.

## COUNT I
## VIOLATION OF MICHIGAN'S WHISTLEBLOWERS' PROTECTION ACT

46.     Plaintiff incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

47.     At all times, Plaintiff was an employee and Defendant was her employer covered by and within the meaning of the Whistleblowers' Protection Act, MCLA 15.361, et seq., MSA 17.428(1), *et seq*.

5

48.     Plaintiff was engaging in a protected activity when she reported a violation or suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, to the Warren Police Department.

49.     The Warren Police Department is a public body under the WPA.

50.     Defendant violated the Whistleblowers' Protection Act when it discriminated against Plaintiff regarding the terms, conditions and privileges of her employment by retaliating against her and terminating her because she reported a violation or suspected violation of a law, regulation, or rule of the State of Michigan and/or the United States of America, and opposed practices made illegal by the laws, regulations and rules of the State of Michigan and/or the United States of America.

51.     Defendant's actions were intentional.

52.     As a direct and proximate cause of Defendant's unlawful actions against Plaintiff, Plaintiff sustained, and will sustain in the future, injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant, in an amount in excess of $75,000.00, plus exemplary damages, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## COUNT II
## SEXUAL HARASSMENT

53.     Plaintiff incorporates by reference paragraphs 1 through 52 of the Complaint as though fully set forth herein.

54.     Pursuant to Title VII of Civil Rights Act of 1964, and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. Plaintiff is guaranteed the right to be free from

6

discriminatory treatment and harassment from their employer and/or supervisors based upon her sex.

55.     At all times relevant Mr. Evans was a supervisor of Defendant, who had supervisory power over Plaintiff for whom Defendant Bridgewater is liable for his conduct.

56.     Mr. Evans' conduct in continuously flirting with Plaintiff, attempting to date Plaintiff, talking about Plaintiff's vagina and the size of her breasts was sexual in nature.

57.     Defendant created a hostile work environment for Plaintiff as a result of sex, Plaintiff's sex and her complaints of sexual harassment.

58.     Defendant Bridgewater is an employer within Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*.

59.     Plaintiff has been subjected to repeated and continuous harassment and discriminatory treatment based upon her sex by Defendant's employees and agents, including Mr. Evans to the point where her status as an employee has been detrimentally affected.

60.     Plaintiff is entitled to exemplary and compensatory damages pursuant to Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. as a result of each and every violation of the act, including costs and reasonable attorney's fees.

61.     Defendants and their agents, employees and representatives, breached and violated their duty to Plaintiff by reason of the following acts and/or omissions:

   a. Violating the laws against discrimination by engaging in sexual harassment in the workplace;

   b. Retaliating against employees who make complaints of discrimination and harassment; and

   c. Failing to take serious and corrective action when informed by Plaintiff that the conduct towards her was unlawful.

62.     Defendant owed Plaintiff as a female employee, a duty to adequately advise their employees to refrain from discriminating against employees.

63.     Defendant, Bridgewater, breached and violated their duty owed to Plaintiff, by

7

reason of the following acts and/or omissions:

    a. Failing to prevent or stop sexual harassment against Plaintiff causing a hostile work environment;

    b. Taking adverse employment action against Plaintiff, including wrongfully terminated Plaintiff due to her sex; and

    c. Retaliating against Plaintiff for her complaints of sexual harassment.

64. As a direct and proximate result of the actions of Defendant, Bridgewater and Plaintiff's supervisor at Bridgewater, Plaintiff was the subject of discriminatory conduct on the part of Defendant, Bridgewater.

65. Because of the unlawful conduct of Defendant, Bridgewater, and its agents and employees, including Supervisor Evans and as a direct and proximate cause of such conduct, Plaintiff has suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

**COUNT III**
**GENDER/SEX DISCRIMINATION**

66. Plaintiff incorporates by reference paragraphs 1 through 65 of the Complaint as though fully set forth herein.

67. Pursuant to Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. Plaintiff is guaranteed the right to be free from discriminatory treatment and harassment from their employer and/or supervisors based upon her sex/gender.

68. Plaintiff's gender as a female caused representatives and/or employees of Defendant to subject her to disparate treatment and hostility.

69. The harassment suffered by Plaintiff due to her gender had the purpose and/or

8

effect of substantially interfering with Plaintiff's employment creating an intimidating, hostile, and offensive environment due to her gender.

70. Defendant had both actual and constructive notice that they were creating an intimidating, hostile and offensive work environment for Plaintiff.

71. Despite having notice that Plaintiff was being discriminated against and harassed due to her gender, Defendant failed to take any remedial action.

72. The hostility and unwelcome treatment due to Plaintiff's gender by representatives and employees of Defendant and their failure to take any remedial action violate Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

73. Plaintiff is entitled to exemplary and compensatory damages pursuant to Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq.* as a result of each and every violation of the act, including costs and reasonable attorney fees.

74. Defendant owed Plaintiff as a female employee, a duty to adequately advise their employees to refrain from discriminating against employees.

75. As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct on the part of Defendant.

76. As a proximate result of the unwelcome treatment due to her gender by representatives and employees of Defendant, and Defendant's failure to take remedial action against the conduct, Plaintiff has sustained injuries including, but not limited to, physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## COUNT IV
## RETALIATION

77.     Plaintiff incorporates by reference paragraphs 1 through 76 of the Complaint as though fully set forth herein.

78.     Pursuant to Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*., Plaintiff is guaranteed the right to be free from discrimination from her employer and/or supervisors based upon sex and her gender.

79.     Plaintiff's sex was a factor in Defendant's employment decisions.

80.     Defendant Bridgewater was Plaintiff's employer within the meaning of Title VII and the Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*.

81.     During the course of her employment with Defendant, Bridgewater Plaintiff was subjected to constant unwelcome sexual harassment creating a hostile work environment by Defendant.

82.     The sexual harassment created a hostile work environment and had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

83.     Plaintiff complained to upper management of Defendant, Bridgewater that she was being discriminated against due to her sex and that she was being subjected to a hostile work environment.

84.     Defendant Bridgewater had actual and constructive notice that it was creating an intimidating, hostile and offensive work environment for Plaintiff.

85.     Despite having notice of the sexual harassment and gender discrimination and conduct toward Plaintiff, Defendant Bridgewater failed to take any remedial action, but instead took adverse employment action against Plaintiff based upon her gender and in retaliation for her complaints of sexual harassment and gender discrimination.

86.     The sexual harassment and gender discrimination and conduct by Defendant

10

and Defendant's failure to take any remedial action violate Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

87.     As a proximate result of Defendant's retaliation of Plaintiff, Plaintiff has sustained injuries including, but not limited to, physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite
    400 Bingham Farms, Michigan
    48025 (248) 540-6800
    sbatey@bateylaw.com

Dated:  March 12, 2019

11

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Jamarina Johnson, by and through her attorney's, Scott P. Batey

and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issues allowed by law.


Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite
400 Bingham Farms, Michigan
48025 (248) 540-6800
sbatey@bateylaw.com

Dated:  March 12, 2019

12